IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RONDA J. MULLENIX,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.   ) | **Civil No. 09-987-DRH-CJP** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

### REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to Chief Judge David R. Herndon pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff Ronda J. Mullenix seeks judicial review of the final agency decision finding that she is not disabled and denying her Disability Insurance Benefits (DIB) and Supplemental Security Income Benefits (SSI).[1]

### Procedural History

Plaintiff filed an application for DIB and SSI on March 22, 2007, alleging disability beginning on December 31, 2004. (Tr. 159, 167). She claims disability due to depression, anxiety and obsessive-compulsive disorder. (Tr. 222).

After the application was initially denied, a hearing was held before Administrative Law Judge (ALJ) Joseph W. Warzycki on March 17, 2009. (Tr. 18-67). ALJ Warzycki denied the application for benefits in a decision dated August 11, 2009. (Tr. 8-17). The Appeals Council

---

[1]The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Thus, plaintiff's DIB and SSI claims will be considered simultaneously, and most citations are to the DIB regulations out of convenience.

denied review, and this decision became the final agency decision. (Tr. 1).

Plaintiff has exhausted her administrative remedies and has filed a timely complaint in this court.

## Issues Raised by Plaintiff

Ms. Mullenix was represented by counsel at the administrative stage, but she is pro se in this Court. She filed a brief at **Doc. 17.** She argues that the ALJ's decision was not supported by substantial evidence in that:

1. The ALJ erred in finding that she had not met the B criteria and in failing to find that her condition meets or equals the criteria of a listed impairment.

2. The ALJ erred in finding that she has the RFC to perform work activities on a sustained basis.

Defendant filed a brief at **Doc. 25**.

## The Evidentiary Record

The Court has reviewed and considered the entire record in formulating this Report and Recommendation. The following is a summary of some of the pertinent portions of the written record.

1. **Plaintiff's Testimony**

Plaintiff was represented at the hearing by attorney Larry Gibson. (Tr. 20).

Ronda Mullenix was 48 years old at the time of the hearing. (Tr. 23). She is divorced and has two grown children. (Tr. 24). She graduated from high school and has three years of college. At the time of the hearing, she was attending classes at SIU-Carbondale, working on a degree in workforce education development. She was taking nine hours, but was going to drop a class because her psychiatrist told her to. She has a drivers license and drives about 360 miles per week during school. (Tr. 24-27).

Plaintiff last worked in 2007, as a receptionist in a medical office. She has also worked

in data entry and at a Walgreen's distribution center. She testified that she lost jobs due to her inability to keep up. (Tr. 27-29). She feels that she cannot work due to problems with concentration. (Tr. 31-32).

Ms. Mullenix testified that her daily activities are fairly limited. She cooks very little, and does not wash dishes. She does laundry. She is physically able to clean, but does not do it. Her social life is "pretty quiet." She does have friends, and stays in contact with her children. She gets "freaked out" in large crowds. She watches a lot of television. (Tr. 35-40).

Plaintiff testified that she is bipolar and that she has manic moods. This has been helped by medication. She also believes she is obsessive compulsive. She has anxiety, which is also helped by medicine. (Tr. 45-47). Plaintiff takes Wellbutrin and Abilify. As to side effects, she testified that Abilify slows her down. (Tr. 42-44). She denied hallucinations, but stated it is hard for her to concentrate. (Tr. 48). She has had problems with alcohol abuse at times. (Tr. 50-51).

Plaintiff also stated that she has back pain, for which she sees a chiropractor. She can walk a couple of blocks and lift 20 pounds. She has difficulty bending over. (Tr.51).

Accommodations are made for her at school to give her extra time for tests and assistance with note-taking. It is difficult for her to concentrate and retain information. (Tr. 53 - 56).

**2.    Testimony of Vocational Expert**

Vocational Expert Vincent Stock testified at the hearing. Plaintiff had no objections to his qualifications. (Tr. 60).

ALJ Warzycki posed a hypothetical question to the VE. He asked Mr. Stock to assume a person capable of performing the exertional demands of light work (lift/carry, push/pull 20 pounds occasionally and 10 pounds frequently; sit, stand and/or walk for 6 out of 8 hours), and limited to "simple, repetitive tasks and instructions and only occasional interaction with supervisors, coworkers, and the public." (Tr. 62-63). The VE testified that a person with this

RFC would not be able to do plaintiff's previous work. (Tr. 63). However, such a person would be able to perform other jobs such as housekeeper in a hotel (12,000 jobs in Illinois) and masker in the semi-conductor industry (4,000 jobs). The VE testified that his testimony is consistent with the descriptions in the *Dictionary of Occupational Titles*. On cross-examination, he acknowledged that an inability to maintain concentration for 20-33.3% of the day would impact the person's ability to maintain employment.(Tr. 63-67).

### 3. Mental Health Treatment

Plaintiff received medical care for a number of issues, including depression and anxiety, at the Mount Vernon Family Health Clinic from 1998 through 2006. (Tr. 285-313). In October, 2005, she was taking Wellbutrin and reported that her anxiety and depression were improved.

In April, 2007, a psychiatric evaluation was performed at the Mental Health Clinic at SIU-Carbondale Health Center. (Tr. 314-327). Dr. Modali diagnosed dysthymic disorder, alcohol abuse and personality disorder with compulsive features. He prescribed the generic form of Wellbutrin and referred plaintiff for counseling. Later that month, plaintiff reported to Dr. Modali that she was doing "much better," was less depressed, and had no complaints of side effects. (Tr. 325).

That same month, plaintiff began receiving mental health services through Jefferson County Comprehensive Services. (Tr. 328-334, 356-372, 479-498). A clinical psychologist diagnosed dysthymic disorder and assigned a Global Assessment of Functioning (GAF) of 60. (Tr. 362). In May, 2007, an Advanced Practice Registered Nurse performed a comprehensive psychiatric evaluation and diagnosed dysthymic disorder versus bipolar disorder. She also assigned a GAF of 60. She prescribed Wellbutrin and Lamictal, a mood stabilizer. In July, 2007, plaintiff reported to the nurse that she had stopped taking Lamictal because it made her too tired, but she was doing well on Wellbutrin. (Tr. 368). The nurse gave her a different mood stabilizer, which plaintiff again stopped taking. (Tr. 365-368). Continuing the pattern, Ms.

Mullenix again

stopped taking prescribed medications in September and October, 2007. The nurse documented that she needed a mood stabilizer and needed to take prescribed medications. (Tr. 363). Jefferson County discontinued her as a patient in October, 2007, due to her noncompliance. (Tr. 497).

Plaintiff received mental health treatment at St. Mary's Hospital in Centralia, Illinois, from December, 2007, through July, 2008. (Tr. 410-478). She was seen again at Mount Vernon Family Health in November, 2008, where she was diagnosed with bipolar disorder and dependent personality disorder. She had again stopped taking her medication. (Tr. 501).

**4.      Consultative Examinations by Bruce Amble, Ph.D.**

Psychologist Bruce Amble performed examinations on July 6, 2007, and April 17, 2009. (Tr. 337-341; 518-527). After the 2009 exam, he completed a Medical Source Statement. He indicated that plaintiff had moderate limitations in her ability to understand and remember instructions and carry out simple instructions, and in her ability to make judgments on simple work-related decisions. She had extreme limitations in her abilities with regard to complex instructions. She also had moderate limitations in her ability to interact with co-workers and supervisors, and marked limitation in her ability to interact with the public and react to changes in the routine work setting. In his narrative report, Dr. Amble stated that plaintiff's "capacity to deal with the stress of daily employment would appear to be more problematic." (Tr. 527).

**5.      State Agency Consultant Assessments**[2]

Psychologist Margaret Wharton completed a Mental Residual Functional Capacity

---

[2] "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." **Social Security Ruling 96-6p, at 2.**

Assessment form on July 30, 2007. (Tr. 68-70).  She noted that plaintiff was not significantly limited in most areas of mental activities, but did note moderate limitation in the ability to maintain attention and concentration, ability to carry out detailed instructions, ability to interact with the general public, get along with co-workers, and to accept instructions and criticism from supervisors.  Dr. Wharton concluded that plaintiff is capable of "simple one-two step work tasks with moderate limit of social demands."  (Tr. 70).

Dr. Wharton also completed a Psychiatric Review Technique form.  (Tr. 342-355).  She concluded that Ms. Mullenix has a depressive syndrome and a personality disorder, and that she has moderate limitation in maintaining social functioning and in maintaining concentration, persistence or pace.  She also found that there had not been any episodes of decompensation. She concluded that the "B" and "C" criteria were not satisfied, and that plaintiff's condition therefore does not meet or equal a listed impairment.  (Tr. 352-353).

## Applicable Standards

To qualify for disability insurance benefits or for supplemental security income benefits, a claimant must be "disabled."   In this context, "disabled" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).**  A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.  In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged

to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  **See,** ***Schroeter v. Sullivan***, **977 F.2d 391, 393 (7th Cir. 1992);** ***Pope v. Shalala***, **998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the Commissioner finds that the claimant has an impairment which is severe and that he is not capable of performing his past relevant work, the burden shifts to the Commissioner to show that there are a significant number of jobs in the economy that claimant is capable of performing.  **See,** ***Bowen v. Yuckert***, **482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** ***Knight v. Chater***, **55 F.3d 309, 313 (7th Cir. 1995).**

It is important to keep in mind the proper standard of review for this Court.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  **42 U.S.C. § 405(g).**  Thus, the Court must determine not whether Ms. Mullenix is, in fact, disabled, but whether ALJ Warzycki's findings were supported by substantial evidence; and, of course, whether any errors of law were made.  **See,** ***Books v. Chater***, **91 F.3d 972, 977-978 (7th Cir. 1996) (citing** ***Diaz v. Chater***, **55 F.3d 300, 306 (7th Cir. 1995)).**  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  ***Richardson v. Perales***, **91 S.Ct. 1420, 1427 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  ***Brewer v. Chater***, **103 F.3d 1384, 1390 (7th Cir. 1997).**

## Analysis

Here, the ALJ properly followed the five step analysis.  He concluded that plaintiff has severe impairments of bipolar disorder and dysthymia, but that these impairments do not meet or

equal a listed impairment. The ALJ went on to assess RFC, finding that plaintiff has the capacity to perform the exertional requirements of light work, with some limitations resulting from her mental impairments. He afforded "significant weight" to the state agency psychologist's review, which concluded that Ms. Mullenix has moderate limitations in social activity and concentration, persistence and pace. (Tr. 13-15).

Plaintiff was found to be unable to perform her relevant past work. The ALJ accepted the VE's testimony as to jobs that plaintiff could perform.

Plaintiff's brief makes two arguments. First, she argues that the ALJ erred in finding that she does not meet or equal a listed impairment because she meets the "B" criteria of Listings 12.04 (affective disorders) and 12.08 (personality disorders).[3] She is incorrect.

The "B" criteria come into play in assessing whether a claimant is presumptively disabled, i.e., whether she meets the criteria for a listed impairment. To be presumptively disabled under listing 12.04 or under listing 12.08, two of the following must be present:

(1) *marked* restriction of activities of daily living;

(2) *marked* difficulties in maintaining social functioning;

(3) *marked* difficulties in concentration, persistence, or pace; or

(4) repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04, 12.08. [emphasis added.]

Dr. Wharton evaluated the "B" criteria in the Psychiatric Review Technique form. (Tr. 342-355). As was described in detail above, she concluded that the "B" criteria were not satisfied. Plaintiff argues that Dr. Wharton was wrong, but she does not cite to any evidence in the record to support her claim. Rather, her argument is based on information that is either not

---

[3]Plaintiff also refers to the "C" criteria in her brief, but she does not make any argument to show that she meets the "C" criteria. Therefore, that point is waived. ***Ehrhart v. Secretary of Health and Human Services***, 969 F.2d 534, 537, n. 5 (7th Cir. 1992).

part of the record or is contradicted by the record.  For instance, she argues that she has "psychotic episodes of manic depressive/bipolar disorders that are untreated and not reported due to the fact that she does not have the capacity to seek necessary treatment." Doc. 17, pp. 11-12.  However, the record contains no evidence to support this allegation.  In short, the ALJ's conclusion that plaintiff is not presumptively disabled is supported by Dr. Wharton's findings on the Psychiatric Review Technique form, which constitutes substantial evidence.

Plaintiff's second point is that the ALJ erred in his determination that she has the RFC to perform work activities on a sustained basis.  This determination was based on the vocational expert's response to a hypothetical question.  Because the hypothetical question was legally deficient, plaintiff's point is well-taken.

In a recent case, the Seventh Circuit emphasized that "for most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." ***O'Connor-Spinner v. Astrue***, ___ F.3d ___, 2010 WL 4812819,*5 (7th Cir., November 29, 2010).  The situation in that case is remarkably similar to the situation presented here.  Ms. O'Connor-Spinner suffered from depression and a state agency psychologist concluded that she had moderate limitation of concentration, persistence and pace.  The ALJ asked the vocational expert a series of hypothetical questions.  The most restrictive hypothetical question restricted the person to routine, repetitive tasks with simple instruction, but did not include a limitation on concentration, persistence and pace.  ***O'Connor-Spinner*, at \*2.**  The Seventh Circuit held that the ALJ's decision was not supported by substantial evidence because the vocational expert was not asked to assume a limitation on concentration, persistence and pace.  While the Court stated that there is no per se requirement that the phrase "concentration, persistence and pace" be used in the hypothetical, it went on to hold that the restriction to simple, repetitive tasks is not an adequate

substitute because it "will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." **O'Connor-Spinner, at *4-5.** The case was remanded to the agency for further proceedings.

Here, ALJ Warzycki granted "significant weight" to the state agency psychologist's evaluation, and he found that plaintiff has moderate limitation of concentration, persistence and pace. Tr. 15. The hypothetical question included a restriction to "simple, repetitive tasks and instructions and only occasional interaction with supervisors, coworkers, and the public." The question did not, however, include a limitation on concentration, persistence and pace. Tr. 62-63.

The VE's testimony on cross-examination indicates that, at some point, limitation of the ability to maintain concentration and focus interferes with the ability to work full time. See, Tr. 65-67. The failure to include that limitation in the hypothetical question means that the ALJ's decision is not supported by substantial evidence.

Defendant does not argue that it was unnecessary to include the limitation on concentration, persistence and pace in the hypothetical. Rather, he argues that the hypothetical question was proper because it "included all credible limitations as found by the ALJ." Doc. 25, p. 13. This argument completely ignores the fact that the ALJ found that plaintiff has moderate limitation in concentration, persistence and pace.

This Court is not making any suggestion as to whether plaintiff is, in fact, disabled, or as to what the ALJ's decision should be on reconsideration.

Under **O'Connor-Spinner, supra,** this case must be remanded to the Commissioner for further proceedings. Remand of a social security case can be ordered pursuant to sentence four or sentence six of 42 U.S.C. § 405(g). A sentence four remand depends upon a finding of error, and is itself a final, appealable order. In contrast, a sentence six remand is for the purpose of receipt of new evidence, but does not determine whether the Commissioner's decision as

rendered was correct.  A sentence six remand is not an appealable order.  **See,** ***Perlman v. Swiss Bank Corporation Comprehensive Disability Protection Plan***, 195 F.3d 975, 978 (7th Cir. 1999).

Here, a sentence four remand is appropriate.

## Recommendation

This Court recommends that the Commissioner's final decision be **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of **42 U.S.C. §405(g).**

Objections to this Report and Recommendation must be filed on or before **December 23, 2010.**

**Submitted:  December 6, 2010.**

> s/ Clifford J. Proud
> **CLIFFORD J. PROUD**
> **UNITED STATES MAGISTRATE JUDGE**